In re Geoffrey T. WILLIAMS, Respondent.

A Member of the Bar of the District of Columbia Court of Appeals.

No. 98–BG–75.

District of Columbia Court of Appeals.

Submitted Dec. 9, 1998.

Decided Dec. 30, 1998.

Before STEADMAN and REID, Associate Judges, and BELSON, Senior Judge.

PER CURIAM:

This reciprocal discipline case comes to us from the Board on Professional Responsibility (the "Board").[1] The Virginia State Bar Disciplinary Board (the "Virginia Board") revoked respondent's license on February 26, 1993, after concluding that respondent had violated the following Virginia disciplinary rules: DR 1–102(A)(3), committing a crime

---

* Judge King was an Associate Judge of the court at the time of argument. His status changed to Associate Judge, Retired, on September 1, 1998.

1. See D.C. Bar Rule XI, § 11.

or deliberately wrongful act; DR 1–102(A)(4), engaging in conduct involving dishonesty, fraud, deceit and misrepresentation; DR 5–101(A), failing to advise his client of conflicting interests; DR 5–104(A), engaging in a prohibited business transaction with a client; and DR 9–102(B)(3), failing to maintain complete records of all client funds.

■ The Supreme Court of Colorado disbarred respondent as reciprocal discipline for the Virginia matters on April 10, 1995. In early 1998, Bar Counsel learned of the Colorado and Virginia orders through the ABA National Disciplinary Data Bank, and informed this court. We referred this matter to the Board pursuant to D.C. Bar Rule XI, § 11. The Board recommends that respondent be disbarred as reciprocal discipline. Neither respondent nor Bar Counsel has noted an exception to the Board's report and recommendation. We agree that the respondent should be disbarred.

The facts pertaining to respondent's conduct are set forth in the portion of the Board's Report and Recommendation which is attached as an appendix to this opinion. It is sufficient for our purposes here to note that respondent's actions included the misappropriation of funds. Specifically, the findings of the Virginia Board demonstrate that respondent knowingly and intentionally misappropriated funds belonging to a client through a series of banking transactions involving his personal accounts and an escrow account of respondent's real estate settlement firm. This alone, without further consideration of respondent's other conduct, warrants disbarment.

■ In this jurisdiction, there is a rebuttable presumption that reciprocal discipline sanctions will be the same as those imposed by the original jurisdiction. *See In re Gardner*, 650 A.2d 693, 695 (D.C.1994). As this court has repeatedly held, however, "in virtually all cases of misappropriation, disbarment will be the only appropriate sanction unless it appears that the misconduct resulted from nothing more than simple negligence." *In re Addams*, 579 A.2d 190, 191 (D.C.1990) (*en banc*). The equivalent in our jurisdiction to Virginia's revocation of the respondent's license is a suspension for an indefinite period, with a showing of fitness required for reinstatement. *See In re Brickle*, 521 A.2d 271, 273 (D.C.1987). Such a suspension constitutes a lesser sanction than disbarment. *Id.* Because misappropriation by conduct more culpable than simple negligence warrants disbarment, this jurisdiction's presumption that it should impose as reciprocal discipline the same sanction as imposed by the original jurisdiction has been overcome. D.C. Bar Rule XI, § 11(c)(4). Accordingly, it is

ORDERED that Geoffrey T. Williams, Esquire, be disbarred. For the purpose of respondent's seeking reinstatement to the bar, his disbarment shall commence with the filing of his affidavit pursuant to D.C. Bar Rule XI, § 14.

*So ordered.*

APPENDIX: EXCERPT FROM

Bar Docket No. 483–97

### REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY

This matter was referred to the Board for consideration of reciprocal discipline following the revocation of Respondent's license to practice law by the Virginia State Bar Disciplinary Board and his disbarment, based on the Virginia proceedings, by the Supreme Court of Colorado. For the reasons stated below, the Board recommends that Respondent's discipline in this Jurisdiction should be disbarment.

### DISCUSSION

#### A. The Virginia Proceedings

Four separate matters were heard by the Virginia State Bar Disciplinary Board (the "Virginia Board") in February 1993. The Virginia Board determined that Respondent's conduct in each of the four matters was sufficiently serious as to separately warrant the revocation of his license to practice law.

### 1. *Virginia State Bar Docket No. 89–051–0857*

In this matter, the evidence established that Respondent owned and operated First Nationwide Title Insurance Company ("First, Nationwide") which performed. title services and procured title insurance policies for Respondent's clients. Respondent and First Nationwide performed these services through an agency agreement with Trans-America Title Insurance Company ("Trans-America").

On April 15, 1988, the Madison National Bank issued a $60,000 check to First Nationwide to cover a mechanics lien placed on a real estate project being developed by one of Respondent's clients (the Golansky Companies). Respondent's title agency company, First Nationwide, was handling the title work and his settlement firm, First Nationwide Settlement Services, was handling the closing.

On April 25, 1988, the $60,000 check was deposited into Respondent's "FN Settlement Services" escrow account at the Perpetual Savings Bank ("Perpetual"). On May 12, 1988, Perpetual completed an intra-bank transfer of $60,000 from Respondent's FN Settlement Services account to a personal account in Respondent's name. On the following day, May 13, 1988, Respondent opened another personal bank account at the Bank of Loudon with an $85,000 check drawn on his personal account at Perpetual. After this $85,000 check was negotiated, the balance in Respondent's personal account at Perpetual was $2,877.50.

After discovering this misappropriation, employees of Respondent reported the matter to TransAmerica. TransAmerica began an investigation by auditing Respondent's books and interviewing personnel at the banks involved with the transfer of funds. During the course of this investigation, Respondent opened a new bank account in the name of "First Nationwide Title Company for Chel Golansky" for $60,766.68. These funds came from an account in Respondent's name at the Arlington Bank and apparently were intended to replace the $60,000 removed from the escrow account plus two and one-half month's interest. Respondent subsequently wrote checks to TransAmerica, transferring the funds that he had held in escrow pursuant to instructions which he had received from TransAmerica. As a result of the misappropriation of the escrowed funds, TransAmerica terminated its agency agreement with Respondent.

The Virginia Board concluded that Respondent's conduct violated Virginia Disciplinary Rule 1–102(A)(3) in that Respondent had committed a crime or deliberately wrongful act that reflected adversely on his fitness to practice law, and Rule 1–102(A)(4), in that he engaged in conduct involving dishonesty, fraud, deceit and misrepresentation.

### 2. *Virginia State Bar Docket No. 91–051–0139*

In this matter, Respondent was found to have falsely represented to Stewart Title Company, in an application for appointment as an agent and/or approved attorney that no agency contract between him and another title insurance underwriter had ever been terminated. In fact, on two occasions prior to his October 25, 1989 application to Stewart Title, Respondent's agency had been terminated (by TransAmerica Title Insurance Company and by Commonwealth Land Title Insurance Company) and Respondent had actual knowledge of these two terminations. Respondent was found to have willfully lied to avoid having to disclose to Stewart Title Company the circumstances under which his agency with TransAmerica was terminated. Respondent was also found to have falsely represented to the Virginia Bar that his agency agreement with TransAmerica had been terminated by "mutual agreement."

As the result of the above misrepresentations, the Virginia Board found that Respondent had violated Disciplinary Rule 1–102(A)(4) for having engaged in conduct involving dishonesty, fraud, deceit and misrepresentation that reflected adversely on his fitness to practice law.

### 3. *Virginia State Bar Docket No. 92–051–0185*

Respondent represented a client in a wrongful death action against the driver of a car who had killed the client's first wife. Respondent settled the matter in August 1984. On the day of settlement, he suggested that the client invest settlement proceeds in some of Respondent's real estate holdings or investments. The client agreed to invest $20,500 in a condominium in Snowmass, Colorado, which was allegedly held by Respondent. In 1985, the client agreed to shift his $20,500 investment in the Snowmass condominium to a property in Washington, D.C., and in 1986 the investment was shifted back to the Snowmass condominium.

During 1986 and thereafter, Respondent handled various legal matters for this client and his second wife, including drafting a prenuptial agreement, drafting wills, attending real estate closings and similar transactions. During this time period, the client invested an additional $50,000 in Respondent's "general investment account" or "GTW Investment account." The client's wife (also Respondent's client) invested $10,000 of her own funds with Respondent. In 1987, the client placed another $20,000 into Respondent's "general investment account," bringing the client's total (not counting the client's original investment of $20,500 and the wife's $10,000 investment) to $70,000. In 1987, this $70,000 was transferred into a Partnership Agreement involving property purportedly owned by Respondent in Leesburg, Virginia.

In 1990, the client learned that Respondent had sold the condominium in Snowmass without telling him. When the client brought this to Respondent's attention, the $20,500 investment was shifted to other properties allegedly owned by Respondent.

During 1991, the client tried unsuccessfully to recover the more than $90,000 which he had invested with Respondent over the years. After a time, Respondent stopped communicating with the client. The client then hired new counsel to represent him in an effort to recover his investments.

The Virginia Board concluded that Respondent's conduct had violated four disciplinary rules: DR 1–102(A)(3) by committing a deliberately wrongful act that adversely reflected on his ability to practice law; DR 1–102(A)(4) for engaging, in conduct involving dishonesty, fraud, deceit and misrepresentation; DR 5–101(A) by failing to advise his client of the actual or potential conflicts of interest where the exercise of his professional judgment on the part of his client may have been affected by his own financial and personal interests; and DR 5–104(A) by engaging in a prohibited business transaction with his client.

### 4. *Virginia State Bar Docket No. 92–051–0558*

In this matter, Respondent was retained by a client to represent her in a divorce proceeding and to negotiate a property settlement. Respondent also drafted her will and incorporated her business. As a result of these representations, the client trusted Respondent to exercise independent professional judgment on her behalf with respect to all matters in which they were involved.

During the divorce, the client could not keep current with the mortgage payments on the marital home. Respondent filed a partition suit on her behalf. Respondent and the husband's attorney were appointed special commissioners for the sale. After the property was listed for sale, Respondent advised the client that an offer had been received. Respondent, however, encouraged the client to enter into an arrangement whereby each of them would acquire a one-half interest in the property. Respondent offered to purchase the former husband's interest in the home, to take control of management of the property, and to share equally with the client in any rents or profits derived from leasing the property. Respondent prepared a partnership agreement of the property, which the client executed. Respondent never advised the client to seek independent legal counsel, nor did he advise the client of the potential and actual conflicts of interest presented by

the transaction. The agreement drafted by Respondent failed to provide adequate security or protection for the client and left the client in the position of an unsecured creditor.

Respondent conducted the closing of the property. Prior to settlement, he induced the client to write a check for $6,500. He failed thereafter to respond to the client's repeated requests to explain the purpose of the $6,500 payment. He failed to advise the client of significant matters involving the partnership property, including lease agreements, repairs and other expenses charged against the property. He failed to account for rents, profits and losses on the property. Without the client's knowledge, he paid himself a management fee for leasing the property and executed leases with tenants, including one lease that gave the lessee an option to purchase.

Respondent perpetrated a fraud on the Circuit Court for Arlington County and upon the client by charging the client and her former husband a special commissioner's fee in excess of the amount authorized by Virginia law. He also filed a "deed of correction" on the property in 1991 that purported to convey his one-half interest to himself as trustee for other named persons. He did not notify the client of the change in title, nor did he explain the significance of the change to her.

The Virginia Board found that Respondent violated the same four disciplinary rules charged in the prior matter, namely, DR 1–102(A)(3), DR 1–102(A)(4), DR 5–101(A) and DR 5–104(A). It further found in this fourth disciplinary matter a violation of DR 9–102(B)(3) in that he failed to maintain complete records of all funds of a client coming into his possession and failing to render appropriate accounts to the client.

\*     \*     \*     \*     \*     \*

BOARD ON PROFESSIONAL RESPONSIBILITY

---

Paul L. Knight
Dated: May 4, 1998.

All members of the Board concur in this report except Ms. Fort, who did not participate.